Good morning, Your Honor. Peter Myers, counsel for the plaintiffs. In this case, Orval Barney, Ray Whetston, and Steve Dursteler. I understand we only have ten minutes, and I would like to reserve at least five minutes for rebuttal. Do so. I wanted to bring to the Court's attention the case in Burkett, B-E-R-G-T, which was filed after all briefing was done. It's a Ninth Circuit case in Did you file a 28-J letter? I did not, Your Honor. All right. Before you leave the courtroom, please provide the details of that citation to opposing counsel and three copies for the Court. I shall. In Burkett, the case did find an abuse of discretion in a lower court's determination where the lower court allowed the terms of a You had an employee seeking to claim benefits under two plans of the employer, one plan being a profit-sharing plan and the other plan being a defined benefit plan under 401A. Your argument here, as I understand it, is that the plan terms are ambiguous, and therefore we can sort of get into that collateral area, but I think you have to persuade us that that, in fact, is true. It may be a little complex, but if you follow all the steps, it seems to me that it establishes the principle that no double-dipping. Your Honor, it doesn't say no double-dipping. Section 5.02 refers to deducting what's called accrued service, capital A, capital S. So accrued service is a defined term in the plan, and it's defined in Section 1.02. Section 1.02 says accrued service refers to service under 3.01 and 3.03. That's it. 3.01 and 3.03 have to do with participants in the prior plan. So the plan is amended in 1988 by Masonite. If you were a salaried and eligible employee prior to 1988, you can't get both the prior plan and the Masonite plan. Our plaintiffs are plaintiffs who are hourly employees. They were not eligible participants in the prior plan. They were hourly employees because they were union members and they were subject to a collective bargaining agreement. Their participation is set forth in 3.05, and 3.05 involves hourly employees who transfer to what's called eligible status, in other words, a salaried employee. 3.05 is not included in the definition of accrued service under Section 1.02 and therefore may not be used under the unambiguous. I mean, I would argue that, yes, the plan terms are unambiguous. They're unambiguous my way. And I was unable to persuade the district court to even look at this issue, that 3.05 is not part of accrued service. So therefore, the transfer from hourly to salaried is not permitted. 3.05 says employees transferring into the plan, that would be your clients. Correct. Shall be given credit for all of his prior employment with Masonite on the same basis as would have been applied if he'd been a participant. And doesn't that fit you? Shall be given credit, yes. Yes, that fits me. We are 3.05. 3.05 is not accrued service. It does not fit within the definition of accrued service, which is Section 1.02. No, but it just establishes your transferees into the plan. They're transferees into the plan. We don't dispute that. They transferred into the plan. They were hourly employees. At the time they transferred, it was represented to them, as is well briefed in our papers, that they would be entitled to receive both the union plan and the salaried plan without offset. A highlights brochure was presented to them, which was consistent with that. It mentioned one offset, but that was solely a Social Security offset, not an offset for union benefits. So all of the information prior to our employees taking on this position was that other employees were getting both benefits without offset. The actual unambiguous terms of the plan support our client's position that they were 3.05 employees, so therefore their accrued service, their service was not defined, quote, capital A, capital S, accrual service under 1.02 for purposes of applying the offset. So therefore, the plan actually cuts our way. Now, our argument is, okay, if it doesn't cut our way, if for some reason there is 3.05 should have been written into 1.02, at a minimum we have an ambiguity there, and that's my point with respect to ambiguity. And I don't think we adequately impress this upon the district court, which is why I feel that the district court's opinion needs to be reviewed by this court. Could you get me to help here with your relation to how you read this Section 305 small b? It states, as I understand the plan, an employee who transfers to the company and becomes a participant, quote, shall be given past service and future service, close quote. How do you read that? Why is that not providing an interpretation of what accrual service is? That is consistent with what we're saying. So if the purpose here was to induce, you had lumbermen up in Ukiah and insufficient managers, and this is set forth in the defendant's deposition. They needed a reason to induce these hourly employees who were getting gobs of overtime to become management people. They used, and these hourly employees could get two pensions. That's what 3.05 sub b says. That's how they read it. They agreed that if you transfer into eligible status, you get past service and future service. But for purposes of offset, which is 5.02, it says only accrual service, as defined in 1.02, is going to be subtracted from your eventual benefit. And accrual service only applies to those participants in the prior plan, meaning the pre-1988 plan. So in other words, if they were salaried before 1988, that accrual service would be offset. All of these employees accepted the managerial positions in the 90s. I think it was 90 and 95. What specific part of your plan do you say prevents under 3.05.B the prior and future service being accrual service? What is there in the plan itself? 1.02, Your Honor, the definition of accrual service. The sum of past service and future service. As defined in 3.01 and 3.03 respectively. 3.05 does say it's to be past and future service, as described in 3.01 and 3.03. So what is there in 3.01 and 3.03 that changes it? 3.01 and 3.03 have to do with salaried employees under the prior plan. 3.05 has to do with union employees or other hourly employees. It doesn't have to be union. It could be somebody who's part-time, for example, transferring to a salaried position. The sum of past service for future service benefits as described in 3.01 and 3.03. So whether or not that's where you go for the description, isn't it, for accrual service? Where we go for the description under? It says that the accrual service as defined in this plan is as, quote, the sum of past service and future service for benefits as described in 3.01 and 3.03 respectively. Okay? Yes. So what is there in 3.01 and 3.03 that indicates that develops your argument that this isn't accrual service? Your Honor, could I reserve some time in rebuttal to address that question? Sure. Thank you. Mr. Barr. Good morning, Your Honor. My name is John Barr. I'm with the firm of McGuire Woods in Richmond, Virginia, and represent Masonite International Paper. Judge Hamilton's district court's analysis of this ambiguity issue is right on point. First off, the cause language in a plan may be complicated, doesn't in and of itself render it ambiguous. You don't have to fall to an elementary sort of Dick and Jane type analysis to rule out ambiguities. If you embrace the argument that plaintiffs make here, you run to Section 5.02, pointless. 3.01 and 3.03 describe what accrual service is for a salaried employee, whether they're part-time, full-time. It doesn't deal with a transfer of a union employee. That's what 3.05 does. 3.05 simply says we will treat a transfer into the plan as if they had been full-time salaried employees from the day they started work. That's what gives them the benefit. They were doing past service and future service. That's correct. And that's what allows that those, for instance, in Mr. Whetstone's case, Mr. Whetstone had been an employee, an hourly employee of Masonite for 34 years. When he went to salaried status. Counsel argues that that doesn't apply to them because of his understanding of the plan. What's your response to that, the way counsel uses 3.01 and 3.03 to get his people out of accrued service, accrual service? Well, go back to the definition of past and future services. Keep going, please. Excuse me. Accrual service is defined in 1.02 as the sum of past and future service as described in 3.01. As Judge Hamilton pointed out, 3.01, 3.03 had two purposes. One is to describe what accrual service is and then to describe who it applies to. Then she points out that 3.05 puts a transferred union employee into the mix of 3.01 and 3.03 for purposes of accrual service, what means accrual service. If you adopt the position that plaintiff advocates here for, the end result would be two things. One is 5.05 would be rendered pointless. But secondly, you would deny to these employees the credit of service for their time as an hourly employee. So they could wind up, if you adopt that interpretation, they would wind up not getting the benefit of credit of service. And again, in Mr. Whetstone's case, for example, he was 34 years as an hourly employee. When he moved to salaried status, he worked eight years as a salaried employee, but he got credit for 42 years as a salaried employee because 3.05 says you will be given accrual service as if you had been employed by a Masonite from day one as a salaried employee. That's the way it works. And again, in interpreting plans, you have to read the whole plan to bring it all together. And that's exactly what Judge Hamilton did. She went through each one of it, and it's a perfect symmetry. It works together to ensure that a person who transfers into the plan receives the credit of service for all years, whether they were salaried or hourly. Counsel, I thought I heard Mr. Myers suggest that the plan that these employees were in before they came into this one was not a covered plan. In other words, it was a union plan, and somehow or other it should be excluded. Did you recall that comment he made? Well, that comment is not supported by the record. The record evidence clearly demonstrates that the Masonite hourly union plan was a Teamsters plan to which Masonite Corporation contributed. That's the key. It's not Masonite's plan, but it's a plan to which Masonite contributed. And that's the language in 5.02 that allows that deduction. If Masonite had not been a contributor to that plan, then 5.02 would not apply. But the record is quite clear on that point. If I've answered your question, I would just like to comment briefly on the issue of attorney's fees. It seems to me that it's quite clear that under ERISA, the award of attorney's fees is a two-step process. One, the court has discretion as to whether to award fees, if at all, regardless of who prevails. And she made the determination, Judge Hamilton made the determination in this case, based on a very thorough analysis of the Hummel factors, that attorney's fees were, in fact, proper. She then moved to the next step to determine what the amount of that fee should be, and she analyzed it, in my view, in a very effective way and concluded that the appropriate fee to the plaintiffs was $15,000. That fee has been paid. Fifteen is some change. But there's nothing to suggest that in any way the district court abused its discretion and committed any error in connection with the award of attorney's fees. We would ask the court, this plan that is before you expressly provides for the reduction, and these plaintiffs are participants in that plan, to make any award in this case that would require Masonite to pay the benefits the plaintiff seeks would cause Masonite to violate the very terms of this plan and put it in breach of its duty to all other plan participants. The plaintiffs are receiving all the benefits that the plan provides for. They have a remedy under the statute to get those benefits, and they have those benefits. What the appellants are arguing for here is to have this court order Masonite International Paper to essentially violate the terms of this ERISA plan. We hope you will reject that argument and affirm the trial court's order. Thank you so much. What is the standard review that were to apply in the interpretation of the plan? We believe the standard review is that discretionary. Abuse of discretion? Abuse of discretion, yes. International Papers plan provides for the fact that the plan administrator may interpret the plan and so forth. That's very clear. It's not the no-vote standard. It's the abuse of discretion standard. Thank you again so much. Thank you, counsel. Mr. Myers, you have some reserved time. I do, Your Honor, and I was looking at the section that Justice Wallace pointed out. I don't see the reference to 3.01 or 3.03, but I do see that he shall be given accrual service as a contributory participant, that accrual service there is using the capital A and the capital S. My point is that if union employees under 3.05 who are getting their accrual service under 3.05 were meant to have their plan deducted, one would expect 1.02 to refer to 3.05. Second of all, the point that Mr. Barr made that Masonite contributed to the Teamsters plan by virtue of the collective bargaining agreement, I think our argument is bolstered by the fact that it's to which a controlled group member contributes, present tense, not contributed pursuant to some kind of collective bargaining agreement that had some global hourly rate for union employees. The tense in 5.02 is contributes, thereby suggesting present tense as opposed to the prior collective bargaining agreement and the contributions. Well, apart from that particular argument, in light of your earlier comment and the response of Mr. Barr, you do concede that this is a plan at least to which Masonite actually contributed. In other words, I got the impression from your earlier argument, Mr. Myers, that you were trying to tell us that the Teamsters plan wasn't even relevant to any of this, that it was somehow to be disregarded. It's an indirect way of making a contribution because the contribution is required by the collective bargaining agreement. Yeah, but the contributions are being made or were being made. Probably as part of an overall. Yeah, into the larger fund, but the employees get the credit for that. Technically, I believe the contributions would have been made by the union, so I would dispute that, that I believe the contributions made by the employer are simply part of the overall agreement and that the union makes the contributions. So I would disagree with that. Would the Court like to hear me on attorney's fees? I'm out of time. I think we understand your argument. Thank you. Do you agree with the standard agreement? I disagree vehemently. Counsel is referring to the IP plan. My clients were denied benefits pursuant to the Masonite plan. 5.02 is in the Masonite plan. The Masonite plan does not confer such discretion. That's set forth in our briefs. Okay. Thank you. All right. Thanks very much, counsel. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Beistline